TO BE PUBLISHED IN THE OFFICIAL RECORDS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 17-301 |
| of | : | December 12, 2017 |
| XAVIER BECERRA
Attorney General | : | |
| LAWRENCE M. DANIELS
Deputy Attorney General | : | |

_____

Proposed relator VIRGIL COTTER has requested leave to sue proposed defendants SANDRA MERAZ and KAYODE KADARA in quo warranto on the following questions:

1.      Is Sandra Meraz unlawfully serving as a board trustee of the Deer Creek Storm Water District because she was appointed to fill a vacancy by the remaining members of the district board, rather than by the Tulare County Board of Supervisors?

2.      Is Kayode Kadara unlawfully serving as a board trustee of the Deer Creek Storm Water District because he is not a "freeholder" of land within the district?

1

17-301

CONCLUSIONS

1.      Leave to sue in quo warranto is GRANTED to determine whether Sandra Meraz is unlawfully serving as a board trustee of the Deer Creek Storm Water District because she was appointed to fill a vacancy by the remaining members of the district board, rather than by the Tulare County Board of Supervisors.

2.      Leave to sue in quo warranto is DENIED to determine whether Kayode Kadara is unlawfully serving as a board trustee of the Deer Creek Storm Water District because he is not a "freeholder" of land within the district.

ANALYSIS

The Deer Creek Storm Water District is organized under the Storm Water District Act of 1909.[1]  A storm water district prevents and controls soil erosion, and protects the lands in the district from storm-water damage, by constructing dams, ditches, and dikes, by planting vegetation, and by keeping water in the soil.[2]  The District, which is located mostly in Tulare County, is governed by three board trustees, who are elected to four-year terms.[3]

Proposed relator Virgil Cotter requests permission to sue proposed defendants Sandra Meraz and Kayode Kadara to oust them as trustees of the District.  Relator claims that the trustees' appointment of Meraz to fill a vacancy on the District board was unlawful because only the Tulare County Board of Supervisors is authorized to make such an appointment.  As to Kadara, Relator claims that he is not a "freeholder" of land within the District, and thus is ineligible to serve as trustee.

As we will discuss in more detail, we conclude that there is a substantial question of law as to whether Meraz was lawfully appointed to the District board, and that it would be in the public interest to have a judicial resolution of this question.  On the other hand, as to Kadara, we conclude that although he may not yet be a "freeholder" of land within the District—because the county has not given final approval for splitting the seller's land into two lots—it would not be in the public interest to allow a lawsuit to proceed against him under the circumstances.

_____

[1] See Stats. 1909, ch. 222, § 1; Wat. Code App., ch. 13.

[2] Wat. Code App., § 13-1.

[3] Wat. Code App., § 13-5; Deer Creek Storm Water Dist. Bylaws, art. III, § 3.01; https://lafco.co.tulare.ca.us/lafco/index.cfm/maps/districts/district-storm-water.

17-301

**Quo Warranto**

Code of Civil Procedure section 803 provides:

"An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state."[4]

This process, known familiarly as quo warranto, is intended to protect the public interest by ensuring that the holder of a public office meets all necessary qualifications.[5] The position of board trustee of a storm water district is a "public office" because it is: (1) a governmental position; (2) created or authorized by law; (3) with a continuing and permanent tenure; and (4) in which the incumbent performs a public function and exercises some sovereign powers of government.[6]

When a private party wishes to file a quo warranto action in the Superior Court, the party must first obtain the Attorney General's permission.[7] In deciding whether to permit a quo warranto action to be filed, the Attorney General does not resolve the merits of the controversy, but rather determines whether the matter presents a substantial issue of fact or law warranting judicial resolution, and whether granting permission to file suit would serve the public interest.[8] With these principles in mind, we consider the

---

[4] Code Civ. Proc., § 803; see *Rando v. Harris* (2014) 228 Cal.App.4th 868, 875 *(Rando)*; 97 Ops.Cal.Atty.Gen. 12, 14 (2014).

[5] *Citizens Utilities Co. v. Super. Ct.* (1976) 56 Cal.App.3d 399, 406 *(Citizens)*; 98 Ops.Cal.Atty.Gen. 94, 95 (2015).

[6] *Moore v. Panish* (1982) 32 Cal.3d 535, 545; *People ex rel Chapman v. Rapsey* (1940) 16 Cal.2d 636, 639-640; see Wat. Code App., ch. 13, *passim* (specifying public duties and powers of storm water district trustees); cf. 98 Ops.Cal.Atty.Gen., *supra,* at pp. 96-97 (water replenishment district director is public office); 97 Ops.Cal.Atty.Gen. 50, 52-53 (2014) (fire protection district director and community services district director); 84 Ops.Cal.Atty.Gen. 135, 135-136 (2001) (resource conservation district director); 73 Ops.Cal.Atty.Gen. 268, 270 (1990) (county water district director); 55 Ops.Cal.Atty.Gen. 36, 37-39 (1972) (water conservation district director and municipal improvement district director); 37 Ops.Cal.Atty.Gen. 146, 146-148 (1961) (soil conservation district director).

[7] *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1228-1229; 98 Ops.Cal.Atty.Gen. 85, 87 (2015).

[8] *Rando, supra*, 228 Cal.App.4th at p. 879; 95 Ops.Cal.Atty.Gen. 50, 51 (2012).

17-301

circumstances pertaining to Meraz and Kadara.

**Meraz**

We are informed that on October 15, 2016, a trustee of the Deer Creek Storm Water District resigned, leaving a vacancy. On or about October 31, 2016, the two remaining trustees appointed Meraz to fill the vacancy.[9] We conclude that there is a substantial question of law as to whether the remaining trustees were authorized to fill the vacancy by appointment.

The parties direct our attention to two statutes bearing on this issue: Government Code section 1780, and Water Code Appendix section 13-6.

On one hand, Government Code section 1780 provides that, in a special district,[10] the remaining members generally may make an appointment to fill any vacancy on their board. The statute states, "Notwithstanding any other provision of law, a vacancy in any elective office on the governing board of a special district, other than those specified in Section 1781, shall be filled pursuant to this section."[11] It further provides that "[t]he remaining members of the district board may fill the vacancy by appointment pursuant to subdivision (d) or by calling an election pursuant to subdivision (e)."[12] Subdivisions (d) and (e) set a time limit of 60 days for the remaining board members to make an appointment or to call for an election.[13] In this case, the remaining trustees purported to

---

[9] The next election for the office Meraz currently holds will occur in November 2018.

[10] Gov. Code, § 1780. Deer Creek Storm Water District "meets the definition of a 'special district'—i.e., one created pursuant to law for the purpose of carrying out specified governmental functions in a limited geographical area . . . ." (99 Ops.Cal.Atty.Gen. 82, 86 (2016), fns. omitted; see Gov. Code, § 56036, subd. (a) ("'District' or 'special district' are synonymous").

[11] Gov. Code, § 1780, subd. (a). Government Code section 1781 states that "[t]he provisions of Section 1780 shall not apply to a school district, a district organized pursuant to Division 6 (commencing with Section 11501) of the Public Utilities Code, or a district subject to the provisions of Chapter 5 (commencing with Section 22825) of Part 5 of Division 11 of the Water Code." Special districts formed under the Storm Water District Act are not among these exclusions.

[12] Gov. Code, § 1780, subd. (c).

[13] Gov. Code, § 1780, subd. (d)(1), (e)(1). If the remaining board members fail to make an appointment within 60 days, then the county board of supervisors must fill the vacancy by appointment or election. (Gov. Code, § 1780, subd. (f)(1).) Here, the

4

appoint Defendant Meraz to fill the vacancy under section 1780.

On the other hand, Water Code Appendix section 13-6, which specifically governs storm water districts, provides that the board of supervisors—not the remaining trustees—shall make any appointment to fill a vacancy on a district board.[14] Section 13-6 states, "Should a vacancy occur or be found to exist in the office of trustee, the board of trustees shall submit to the board of supervisors a list of suggested appointees, and the board of supervisors shall fill the vacancy by appointment. If the board of supervisors does not make the appointment from the list submitted by the board of trustees, it shall make a finding stating the reasons for its selection."[15]

To make sense of these apparently contradictory statutes, we apply well-established tenets of statutory construction. The guiding principle in construing a statute is "to ascertain the intent of the Legislature so as to effectuate the purpose of the law."[16] We consider both the words of the statutes and their context within the entire statutory framework to determine their scope and purpose and to harmonize all parts of the law.[17] We may consider a statute's legislative history and historical background in determining the Legislature's intent.[18]

In evaluating the Legislature's intent, we also use the following interpretive canons, none of which is necessarily dispositive by itself:

- A specific statute controls over a general statute governing the same subject matter.[19]

---

remaining trustees appointed Meraz within 60 days of the vacancy.

[14] Wat. Code App., § 13-6.

[15] Wat. Code App., § 13-6; accord, Deer Creek Storm Water Dist. Bylaws, art. III, § 3.04. The District's bylaws state, "If the board of supervisors chooses not to fill the vacancy, then the Board of Trustees shall fill the vacancy pursuant to Government Code sections 1770 *et seq.* [including section 1780]." (Deer Creek Storm Water Dist. Bylaws, art. III, § 3.04, italics in original.)

[16] *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386 (*Dyna-Med*).

[17] *Dyna-Med, supra*, 43 Cal.3d at pp. 1386-1387; *Los Angeles Unified School Dist. v. Garcia* (2013) 58 Cal.4th 175, 186.

[18] *Dyna-Med, supra*, 43 Cal.3d at p. 1387.

[19] Code Civ. Proc., § 1859; *Estate of Kramme* (1978) 20 Cal.3d 567, 576; *Shewry v.*

5

- A later enactment controls over an earlier enactment governing the same subject matter. [20]

- "The statutory phrase 'notwithstanding any other law' is a term of art that declares the legislative intent to override all contrary law" and "to have the specific statute control despite the existence of other law which might otherwise govern."[21]

- Where the Legislature has not expressly repealed a statute, a court will find an implied repeal "only where there is no rational basis for harmonizing the two potentially conflicting statutes, and the statutes are irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation."[22]

We recently applied these factors to a similar question regarding appointments to the board of a special district. In 99 Ops.Cal.Atty.Gen. 82 (2016), we explained that the specific statute governing independent library districts, Education Code section 19426, directs a county board of supervisors to fill any vacancy on the library district board.[23] At the same time, Government Code section 1780, which is the general statute governing special districts, calls for the remaining members of the board to fill the vacancy by appointment.[24] We acknowledged that the phrase "notwithstanding any other provision of law" in Government Code section 1780 suggests that this general rule should prevail over the other statute.[25] We concluded, however, that section 19426 should control both because it is the more specific statute and because it was enacted later than the general statute.[26]

---

*Wooten* (2009) 172 Cal.App.4th 741, 747.

[20] *Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 310.

[21] *Klajic v. Castaic Lake Water Agency* (2004) 121 Cal.App.4th 5, 13, internal citations and quotation marks omitted.

[22] *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 477, internal citations and quotation marks omitted.

[23] 99 Ops.Cal.Atty.Gen., *supra*, at p. 85, citing Ed. Code, § 19426.

[24] See 99 Ops.Cal.Atty.Gen., *supra*, at pp. 83, 86.

[25] 99 Ops.Cal.Atty.Gen., *supra*, at p. 86, fn. 27; see 83 Ops.Cal.Atty.Gen. 53, 57 (2000) ("Because of the phrase 'Notwithstanding any other provision of law,' the procedures set forth in section 1780 for filling vacancies on the District board control over those contained in any other statute").

[26] 99 Ops.Cal.Atty.Gen., *supra*, at p. 86, fn. 27. In the opinion, we ultimately concluded that the Banning Unified School District Library District was a "school-

Here too, the general statute (Government Code section 1780) requires the remaining trustees to fill a vacancy on the board, while the specific statute (Water Code Appendix section 13-6) requires the county board of supervisors to fill a vacancy on the board. The key difference between our 2016 opinion and the present situation is that, here, the Legislature enacted the specific statute *before* the general statute.[27]

Relator, citing the general principle that a specific statute prevails over a general statute, argues that Water Code Appendix section 13-6 should control over Government Code section 1780. Meraz, however, citing the general principle that a later-enacted statute prevails over an earlier one, and noting the supersession provision ("Notwithstanding any other statute . . ."), argues that Government Code section 1780 should control over Water Code Appendix section 13-6. Relator replies that section 13-6 should nonetheless prevail because it was amended in 1985, after section 1780 was enacted.[28] Significantly, during the amendment process, the Legislature considered and rejected the option of conforming section 13-6 to section 1780, opting instead to refine the procedure for appointments by the board of supervisors.[29]

established" library district, not an "independent" library district, and that Education Code section 19426 applied only to the latter, not the former. (99 Ops.Cal.Atty.Gen., *supra*, at pp. 84-86.)

[27] Compare Stats. 1975, ch. 1059, § 1.3 (repealing, reorganizing, and reenacting Government Code section 1780) with Stats. 1909, ch. 222, § 6 (enacting Water Code Appendix section 13-6). When Government Code section 1780 was first enacted in 1973, it already specified that the remaining members of the special-district board should fill the vacancy. (Stats. 1973, ch. 934, § 1.) In comparison, the original version of Water Code Appendix section 13-6 in 1909 contained no provision regarding the filling of trustee-vacancies. (Stats. 1909, ch. 222, § 6.) It was not until 1935 that the Legislature added such a provision to section 13-6. (Stats. 1935, ch. 88, § 1 ["Should a vacancy occur or be found to exist in the office of trustee, the board of supervisors shall fill the same by appointment"].)

[28] Stats. 1985, ch. 310, § 2; see also *In re Marriage of Cutler* (2000) 79 Cal.App.4th 460, 475 ("In construing a statute, we presume the Legislature has knowledge of all prior laws and enacts and amends statutes in light of those laws").

[29] An earlier version of the amendment would have required that any "vacancy shall be filled pursuant to section 1780 of the Government Code." (Assem. Bill No. 591 (1985-1986 Reg. Sess.), as introduced Feb. 7, 1985.) But in the final version of the bill (now the current version of the statute), the Legislature deleted this language in favor of a middle ground whereby the trustees recommend possible appointees for the board of supervisors to consider in making the appointment. (Stats. 1985, ch. 310, § 2; Assem. Bill No. 591 (1985-1986 Reg. Sess.), as amended Apr. 9, 1985; cf. *In re Jonathan T.*

7

17-301

It is true, as Meraz points out, that Government Code section 1780 has been amended multiple times since the 1985 amendment to Water Code Appendix section 13-6.[30] But we are aware of nothing in the history and amendments to section 1780 indicating that the Legislature intended to reverse its 1985 ratification of section 13-6. In light of the Legislature's considered decision not to apply section 1780 to storm water districts, we believe it would take more than some general changes to the section 1780 procedure to show that the Legislature meant to repeal section 13-6.[31] In our view, the legislative history demonstrates that Water Code Appendix section 13-6 is meant to override Government Code section 1780 as to storm water districts, and that Meraz's appointment may therefore have been invalid. In any event, we conclude that the matter raises a substantial issue of law that warrants judicial resolution.

Moreover, we conclude that it would be in the public interest to grant Relator's application. In the absence of any countervailing circumstances (such as pending litigation or shortness of time remaining on a term in office), we consider the need for judicial resolution to be an adequate "public purpose" for granting leave to sue here.[32] Judicial resolution of this issue may help clarify which entity should fill a vacancy on storm water district board in the future.[33]

Accordingly, Relator's application for leave to sue in quo warranto as to Meraz is GRANTED.

---

(2008) 166 Cal.App.4th 474, 481-482 [in deleting language in an amendment to Penal Code section 213 that it was a new offense, rather than a sentencing enhancement or factor, the Legislature intended for section 213 not to constitute a new offense].)

[30] Stats. 2007, ch. 343, § 4; Stats. 1999, ch. 312, § 27; Stats. 1994, ch. 923, § 31; Stats. 1987, ch. 1184, § 2; Stats. 1986, ch. 866, § 20.

[31] See *Banks v. Yolo County* (1894) 104 Cal. 258, 259 (a specific statute is "never deemed repealed by general legislation except upon the most unequivocal manifestation of intent to that effect").

[32] 95 Ops.Cal.Atty.Gen. 77, 87 (2012).

[33] 84 Ops.Cal.Atty.Gen., *supra*, at p. 140 ("the residents of the District, the Supervisors, and even the Board have mutual interests in a judicial resolution regarding the procedures to be followed in making appointments to the Board"); see 97 Ops.Cal.Atty.Gen., *supra*, at p. 19; 73 Ops.Cal.Atty.Gen. 197, 212 (1990).

**Kadara**

As it pertains to Kadara, Relator's application presents different considerations and requires a separate analysis. Relator argues that Kadara is not properly serving on the District board because he is not a "freeholder" of land within the District. For the following reasons, we deny the application as to Kadara.

To serve on the Deer Creek Storm Water board, a person must be "a freeholder of the district."[34] A "freehold" is an estate of "indeterminate duration, and carries with it title to land."[35] The California Supreme Court has described "title" as the "complete ownership, in the sense of all the rights, privileges, powers and immunities an owner may have with respect to land."[36] To be "perfect," title needs to be "good and valid beyond all reasonable doubt," and to be good, title "should be free from litigation, palpable defects, and grave doubts, should consist of both legal and equitable titles, and should be fairly deducible of record."[37] "Marketable title" is "a title that a reasonable buyer would accept because it appears to lack any defect and to cover the entire property that the seller has purported to sell."[38]

---

[34] Wat. Code App., § 13-5; accord, Deer Creek Storm Water Dist. Bylaws, art. III, § 3.01; see Wat. Code App., § 13-6 ("An appointee shall possess the same qualifications as are required by this act for trustees"); Deer Creek Storm Water Dist. Bylaws, art. III, § 3.04 (same); see generally Elec. Code, §§ 10500, subd. (b)(9), 10514.

[35] *Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155, 162, internal citations omitted; see Civ. Code, § 765 ("Estates of inheritance and for life are called estates of freehold"); see also *Pacific Southwest Realty Co. v. County of Los Angeles*, *supra*, 1 Cal.4th at p. 163 ("the freeholder is seised of land, whereas the leaseholder is not").

[36] *Hocking v. Title Ins. & Trust Co.* (1951) 37 Cal.2d 644, 648 (*Hocking*), internal quotation marks omitted; see Black's Law Dict. (10th ed. 2014) p. 1712, col. 2 ("title" is "[t]he union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property"); Random House Webster's Unabridged Dict. (2d ed. 1997) p. 1989, col. 1 (defining "title" as "a unity combining all of the requisites to complete legal ownership").

[37] *Hocking*, *supra*, 37 Cal.2d at p. 649, internal quotation marks omitted; Black's Law Dict., *supra*, at p. 1714, col. 1; see also Black's Law Dict., *supra*, at p. 1714, col. 1 (alternately defining "perfect title" as "[a] grant of land that requires no further act from the legal authority to constitute an absolute title to the land").

[38] Black's Law Dict., *supra*, at p. 1713, col. 2; see *Hocking*, *supra*, 37 Cal.2d at p. 649 ("if the estate or interest of the vendor is subject to defeasance upon the happening of a

The parties have supplied the following information relating to whether Kadara is a freeholder of land within the District:

- On April 1, 2010, Kadara entered into a five-year lease, with a purchase option, for a specified 0.55-acre area of land located within the District, and within a larger parcel of property owned by his sister-in-law. The agreement permitted Kadara to accelerate his payments and to pay off the purchase price in full at any time. It further provided that, once Kadara had made all the payments on the property, a lot split would be completed in accordance with Tulare County requirements, and the property would be formally transferred to Kadara and recorded.

- Shortly after April 1, 2010, Kadara and his family moved a mobile home onto his leased portion of the property and settled there. Also, in anticipation of completing the purchase, Kadara filed an application with the county for a formal lot split in order to create a separate legal parcel for his portion of the property.

- On November 18, 2010, the Site Plan Review Committee of the Tulare County Resource Management Agency issued a resolution conditionally approving Kadara's application for a parcel map dividing the property into two separate parcels. The committee imposed what Kadara considered to be "an onerous condition" regarding improvement of the new lot. He appealed to have the condition removed.

- On April 1, 2013, while the appeal was being considered, Kadara availed himself of the accelerated-payment option and paid off the purchase price in full.

- On April 22, 2014, the Tulare County Board of Supervisors appointed Defendant Kadara as a trustee of the District. His seat will be up for election in November 2018.

- On August 2, 2016, the Tulare County Resource Management Agency removed the improvement condition to which Kadara had objected and filed an appeal, and forwarded the committee's resolution to the county offices of assessor and auditor-controller for final approval of the lot split and creation of the separate parcel.

---

contingent event or the nonperformance of a condition, the title tendered is not perfect or 'marketable'"); see also Black's Law Dict., *supra*, at p. 1713, col. 1 ("clear title" is title "free from any encumbrances, burdens, or other limitations").

10

17-301

Based on these undisputed allegations, Relator claims that Kadara is disqualified from the office of trustee. Relator contends that Kadara is not presently a "freeholder" of land, as required by the statute, because the county has not yet formally recognized the land he paid for as a separate lot. Kadara asserts that, when he made the final payment on the property, he became the owner of the land, and thus became a freeholder.

As indicated by the facts recounted above, Kadara has fulfilled his financial obligations to the seller in the lease-to-own agreement by making all payments required to purchase a portion of the seller's land, and it appears that Kadara has taken the necessary administrative steps to establish his title to it. But although the county's Site Plan Review Committee has recommended approval of Kadara's lot split and purchase, and although there do not appear to be any further impediments to such an approval, the matter is still pending with the county assessor and auditor-controller. As a result, it remains debatable whether Kadara's title to the lot is "good and valid beyond all reasonable doubt,"[39] giving rise to Relator's contention that Kadara is not currently eligible to serve as a trustee of the District.

We have broad discretion in ruling on quo warranto applications, however, and the presence of a debatable issue does not necessarily establish that the issue is a substantial one, much less that the dispute warrants judicial resolution in a quo warranto action.[40] And even where an issue is deemed to be substantial in our analytic framework, our exercise of discretion whether to grant leave to sue is guided by considerations of the overall public interest.[41] For instance, we have denied applications for quo warranto when there was no substantial likelihood of success on the merits because the issue is, or will likely become, moot.[42] We have also declined to allow a quo warranto case to

---

[39] *Hocking*, *supra*, 37 Cal.2d at p. 649, internal quotation marks omitted.

[40] See *Rando*, *supra*, 228 Cal.App.4th at pp. 877-878 (relator's arguable interpretation of City Charter provision did not automatically elevate claim into a substantial question of law or fact for purposes of determining the appropriateness of quo warranto); 96 Ops.Cal.Atty.Gen. 48, 49 (2013).

[41] 96 Ops.Cal.Atty.Gen., *supra*, at p. 49; see also *City of Campbell v. Mosk* (1961) 197 Cal.App.2d 640, 650 ("We do not believe . . . that the debatable issue inevitably produces the quo warranto. Indeed, the Attorney General's exercise of discretion is posited upon the existence of a debatable issue. . . . The crystallization of an issue thus does not preclude an exercise of discretion; it causes it. . . . The exercise of the discretion of the Attorney General in the grant of such approval to sue calls for care and delicacy. Certainly the private party's right to it cannot be absolute; the public interest prevails").

[42] See, e.g., 96 Ops.Cal.Atty.Gen. 36, 38, 42 (2013) (Supreme Court order removing judge rendered moot any further action to remove the judge); 83 Ops.Cal.Atty.Gen. 181,

17-301

proceed where the public injury alleged is "insubstantial"[43] or where no "public purpose would be served."[44]

Kadara has supplied unrefuted evidence that on August 2, 2016, the Tulare County Resource Management Agency forwarded a resolution to approve the lot split and creation of his separate parcel to the assessor and auditor's offices, where the resolution awaits final approval. Although it is conceivable that final approval could be denied, it seems unlikely: Kadara has apparently complied with or successfully contested all of the agency's conditions. Once there is a legally recognized lot, and the deed is recorded, Kadara will hold legal title, and will indisputably have freeholder status. Under these circumstances, we think it likely that Relator's claim will soon become moot.[45]

Moreover, we believe that the public interest would not be served by allowing a quo warranto to proceed against Kadara. The purpose of the District is to prevent storm water from damaging the real property in the District.[46] As such, the District "disproportionately affect[s] landowners because the economic burden of its operations is confined to landowners . . . ."[47] The freeholder requirement is intended to ensure that a

---

184-185 (2000) (denying quo warranto because "judicial proceedings may not reasonably be expected to terminate until after the expiration of their current terms of office"); 82 Ops.Cal.Atty.Gen. 219, 223-224 (1999) (recent legislation would moot quo warranto claim); 82 Ops.Cal.Atty.Gen. 6, 10-11 (1999) (where less than two months remained in term, quo warranto denied despite presence of substantial issues of fact and law).

[43] 81 Ops.Cal.Atty.Gen. 240, 242 (1998).

[44] 72 Ops.Cal.Atty.Gen. 15, 23-24 (1989).

[45] 83 Ops.Cal.Atty.Gen., *supra*, at p. 185 ("While it cannot be accurately predicted how long it would take for the present action to be filed, heard, and resolved, even in the absence of an appeal, it is at least reasonably probable that the issue would become moot prior to resolution," internal quotation marks omitted); see *Citizens, supra*, 56 Cal.App.3d at p. 406 (quo warranto "is a preventative remedy addressed to preventing a continuing exercise of an authority unlawfully asserted rather than to correcting what has already been done under that authority").

[46] Wat. Code App., § 13-1; *So. Pacific Co. v. Riverside County* (1939) 35 Cal.App.2d 380, 387 (concluding that in the Act, "real property" means the same as "land").

[47] *Choudhry v. Free* (1976) 17 Cal.3d 660, 667; see *So. Pacific Railroad Co. v. Stibbens* (1930) 103 Cal.App. 664, 673 (the Act was "intended to place the burdens of the cost of the improvements upon the lands within the district that were benefited by them"); see generally Cal. Const., art. I, § 22; *Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.* (1973) 410 U.S. 719, 726-730; *Tarpey v. McClure* (1923) 190 Cal. 593,

12

trustee shares the same interests as district landowners and acts as their agent with a personal stake in the board's decisions.[48] Although Kadara's freehold title may not be perfected until the lot split receives final approval, he has consummated the contract for sale with the seller, made all payments for the purchase, and diligently pursued the lot split. Meanwhile, for more than seven years, he and his family have resided on the land. He has much the same interest in protecting the lands in the District from storm water damage as any freeholder of property in the District. We conclude that it would not be in the overall public interest to allow a quo warranto lawsuit to proceed against Defendant Kadara.

Accordingly, Relator's application for leave to sue in quo warranto as to Kadara is DENIED.

*****

---

606.

[48] See *People ex rel. Chapman v. Sacramento Drainage Dist.* (1909) 155 Cal. 373, 389 (landowners may "appoint their own agents" in the Sacramento Drainage District); *People ex rel. Van Loben Sels v. Reclamation Dist. No. 551* (1897) 117 Cal. 114, 124 (a property qualification to vote for the board of a reclamation district is permissible because the reclamation district "is one of those public enterprises which results in a benefit to private lands, and . . . those who are specially interested, and who must pay for the improvement . . . are permitted to appoint those who shall superintend it"); *Argyle v. Johnson* (Utah 1911) 118 P. 487, 491 ("Every trustee, as a landowner, is therefore directly interested in any assessment that will be made").